Electronically Filed
Marie Zaiz
Circuit Clerk
Ashley Doughty
22LA0123
St. Clair County
2/9/2022 1:04 PM
16640118

IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT
ST CLAIR COUNTY, ILLINOIS

| | | |
|---|---|---|
| WALTER R. SCOTT, | ) | No. 22-LA-0123 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs.- | ) | |
| | ) | |
| 84 LUMBER COMPANY, a limited | ) | |
|     partnership, | ) | |
| ACE HARDWARE CORPORATION, | ) | |
| AIR & LIQUID SYSTEMS CORPORATION, | ) | |
|     Successor-by-Merger to BUFFALO | ) | |
|     PUMPS, INC., | ) | |
| ALFA LAVAL INC., as Successor-in-Interest | ) | |
|     to THE DELAVAL SEPARATOR | ) | |
|     COMPANY, | ) | |
| AMCORD, INC., | ) | |
| AMERICAN BILTRITE, INC., | ) | |
| ARMSTRONG INTERNATIONAL, INC., | ) | |
| ARVINMERITOR, INC., | ) | |
| ATWOOD & MORRILL as Successor-in- | ) | |
|     Interest to WEIR VALVES AND | ) | |
|     CONTROLS USA Inc, | ) | |
| AURORA PUMP COMPANY, | ) | |
| BLACKMER PUMP COMPANY, | ) | |
| BRYAN STEAM LLC, | ) | |
| BW/IP INC., | ) | |
| CAMERON INTERNATIONAL | ) | |
|     CORPORATION f/k/a COOPER | ) | |
|     CAMERON CORPORATION, | ) | |
| CARRIER CORPORATION including its | ) | |
|     BRYANT HEATING AND COOLING | ) | |
|     and its division INTERNATIONAL | ) | |
|     COMFORT PRODUCTS, | ) | |
| CLARK-RELIANCE CORPORATION, | ) | |
| CLEAVER-BROOKS, a division of AQUA- | ) | |
|     CHEM INC., | ) | |
| CONWED CORPORATION, Individually and | ) | |
|     as Successor-in-Interest to WOOD | ) | |
|     CONVERSION COMPANY, | ) | |
| COPES-VULCAN, INC., | ) | |
| CRANE CO., | ) | |
| CROWN, CORK & SEAL USA, INC., | ) | |

Exhibit A

DAP, INC., k/n/a LA MIRADA PRODUCTS )
    CO., INC., )
THE DOW CHEMICAL COMPANY, )
EATON CORPORATION, Individually and as )
    Successor-in-Interest to CUTLER )
    HAMMER, INC., )
FLOWSERVE US, INC., Solely as Successor )
    to ROCKWELL MANUFACTURING )
    COMPANY and EDWARD VALVES, )
    INC., )
FMC CORPORATION, as Successor-in- )
    Interest to NORTHERN PUMPS and on )
    behalf of its former Peerless Pump and )
    Chicago Pump businesses, )
FOSTER WHEELER, LLC as survivor to the )
    merger of FOSTER WHEELER )
    CORPORATION, )
GARDNER DENVER, INC., )
GENERAL ELECTRIC COMPANY, )
GENUINE PARTS COMPANY, d/b/a )
    NATIONAL AUTOMOTIVE PARTS )
    ASSOCIATION a/k/a NAPA, )
GOODYEAR TIRE & RUBBER CO., )
GOULD ELECTRONICS, INC., )
    INDIVIDUALLY AND AS )
    SUCCESSOR-IN-INTEREST TO )
    BULLDOG ELECTRIC AND ITE )
    ELECTRICAL PRODUCTS )
    COMPANY, )
GOULDS PUMPS LLC, )
GRAYBAR ELECTRIC COMPANY, INC., )
GREENE TWEED & CO, INC., )
GRINNELL LLC, )
GTE Operations Support Incorporated, )
HERCULES, LLC, )
HONEYWELL INTERNATIONAL, INC., as )
    Successor-in-Interest to BENDIX )
    CORP., )
HONEYWELL INTERNATIONAL INC., as )
    Successor-in-Interest to HONEYWELL )
    INC., )
HOWDEN NORTH AMERICA, INC., )
    individually and as Successor-in-Interest )
    to BUFFALO FORGE COMPANY, )
IMO INDUSTRIES INC., INDIVIDUALLY )
    AND AS SUCCESSOR-IN-INTEREST )

TO DELAVAL STEAM TURBINE )
    COMPANY, )
INVENSYS SYSTEMS, INC., Individually and )
    as Successor-in-Interest to Fulton )
    Sylphon, )
INDUSTRIAL HOLDINGS CORPORATION )
    f/k/a CARBORUNDUM COMPANY, )
ITT CORPORATION, )
J-M MANUFACTURING COMPANY, INC., )
JAMES WALKER MFG. CO., )
JOHN CRANE, INC., )
JOHNSON CONTROLS, INC., )
KAISER GYPSUM COMPANY, INC, )
KELLY-MOORE PAINT COMPANY, INC., )
KROGH PUMP COMPANY, INC., )
LAMONS, )
MCKESSON CORPORATION, )
MCMASTER-CARR SUPPLY COMPANY, )
METROPOLITAN LIFE INSURANCE CO., )
MILWAUKEE VALVE COMPANY, INC., )
MISSION STUCCO CO., )
THE NASH ENGINEERING COMPANY, )
PFIZER, INC., )
PNEUMO ABEX, LLC, as Successor-in- )
    Interest to ABEX CORPORATION, )
Rexel USA, INC, )
ROCKWELL AUTOMATION, INC., F/K/A )
    ALLEN-BRADLEY COMPANY, )
    Individually and as Successor-in- )
    Interest to ROSTONE CORP., )
SCHNEIDER ELECTRIC USA INC, )
    Individually and as Successor-in- )
    Interest to SQUARE D COMPANY, )
SPENCE ENGINEERING COMPANY, INC., )
SPIRAX SARCO, INC., )
SPX CORPORATION AS SUCCESSOR-IN - )
    INTEREST TO UNION PUMPS AND )
    CLYDE PUMPS N/K/A CLYDE )
    UNION PUMPS AN SPX BRAND, )
SULZER PUMPS (US) INC, Individually and )
    as Successor-in-Interest to BINGHAM )
    PUMPS, )
SUPRO CORPORATION, )
UNION CARBIDE CORPORATION, )
VANDERBILT MINERALS, LLC F/K/A R.T. )
    VANDERBILT COMPANY, INC., )

Page 3 of 27

VELAN VALVE CORP.,                              )
VIACOMCBS INC., f/k/a CBS Corporation, a        )
     Delaware corporation, f/k/a Viacom       )
     Inc., successor-by-merger to CBS         )
     Corporation, a Pennsylvania              )
     corporation, f/k/a Westinghouse Electric )
     Corporation,                             )
VIKING PUMP, INC.,                              )
WARREN PUMPS, LLC., f/k/a WARREN                )
     PUMPS, INC.,                             )
WELCO MANUFACTURING COMPANY,                    )
WHITTAKER CLARK & DANIELS,                      )
THE WILLIAM POWELL COMPANY,                     )
YORK INTERNATIONAL CORPORATION,                 )
ZF ACTIVE SAFETY US INC. f/k/a                  )
     KELSEY-HAYES COMPANY,                    )
and,                                            )
ZURN INDUSTRIES, LLC,                           )
                                                )
     Defendants.                              )

(Remainder of Page Intentionally Left Blank)

## COMPLAINT

### COUNT I
### (NEGLIGENCE COUNT AS TO MANUFACTURERS OF ASBESTOS PRODUCTS)

Now comes Plaintiff, WALTER R. SCOTT, by his attorneys, SWMW Law, LLC, and for their cause of action against the Defendants, states:

1.     Walter R. Scott was first exposed to asbestos while serving in the U.S. Navy from 1963-1967 as an electrician including aboard the USS Gearing (DD-710) and USS Laffey (DD-724), where he regularly worked in and around the engineering spaces including the engine room, boiler room and other areas where he and others around him performed maintenance and repairs to boilers, pumps, valves, steam pipes and other related steam equipment and structures. Following his time in the Navy, he worked for General Electric in Denver, Colorado where he rebuilt and rewound electric motors and other equipment.  Then from 1969-1987, he became a carpenter and worked building new and remodeling homes in Nevada and California where he did framing, electrical, stucco and drywall work.  In the late 1980s, he worked for Excel Electrical Company where he did maintenance projects in schools until he was unable to work.  Walter R. Scott was also exposed to asbestos while performing his own and helping others perform their own home remodeling and automotive repair work in the 1960s and 1970s.

2.     Plaintiff's exposure to the materials, products, equipment, activities and conditions attributable to the various Defendants occurred at different times as to each and not necessarily throughout Plaintiff's entire career or life as to any particular Defendant. Plaintiff does not intend to extend exposure to a Defendant beyond the years established by the evidence in the case as to that particular Defendant.  Plaintiff's exposure to asbestos does not extend beyond December 4, 1980 unless established by the evidence in the case as to a particular Defendant.

3.    During the course of Plaintiff's employments at the location(s) mentioned above, the Plaintiff was exposed to and inhaled, ingested or otherwise absorbed large amounts of asbestos fibers emanating from certain products they were working with and around which were manufactured, sold, distributed or installed by the Defendants: 84 LUMBER COMPANY, a limited partnership, ACE HARDWARE CORPORATION, AIR & LIQUID SYSTEMS CORPORATION, Successor-by-Merger to BUFFALO PUMPS, INC., ALFA LAVAL INC., as Successor-in-Interest to THE DELAVAL SEPARATOR COMPANY, AMCORD, INC., AMERICAN BILTRITE, INC., ARMSTRONG INTERNATIONAL, INC., ARVINMERITOR, INC., ATWOOD & MORRILL as Successor-in-Interest to WEIR VALVES AND CONTROLS USA Inc, AURORA PUMP COMPANY, BLACKMER PUMP COMPANY, BRYAN STEAM LLC, BW/IP INC., CAMERON INTERNATIONAL CORPORATION f/k/a COOPER CAMERON CORPORATION, CARRIER CORPORATION including its BRYANT HEATING AND COOLING and its division INTERNATIONAL COMFORT PRODUCTS, CLARK-RELIANCE CORPORATION, CLEAVER-BROOKS, a division of AQUA-CHEM INC., CONWED CORPORATION, Individually and as Successor-in-Interest to WOOD CONVERSION COMPANY, COPES-VULCAN, INC., CRANE CO., CROWN, CORK & SEAL USA, INC., DAP, INC., k/n/a LA MIRADA PRODUCTS CO., INC., THE DOW CHEMICAL COMPANY, EATON CORPORATION, Individually and as Successor-in-Interest to CUTLER HAMMER, INC., FLOWSERVE US, INC., Solely as Successor to ROCKWELL MANUFACTURING COMPANY and EDWARD VALVES, INC., FMC CORPORATION, as Successor-in-Interest to NORTHERN PUMPS and on behalf of its former Peerless Pump and Chicago Pump businesses, FOSTER WHEELER, LLC as survivor to the merger of FOSTER WHEELER CORPORATION, GARDNER DENVER, INC., GENERAL ELECTRIC

COMPANY, GENUINE PARTS COMPANY, d/b/a NATIONAL AUTOMOTIVE PARTS ASSOCIATION a/k/a NAPA, GOODYEAR TIRE & RUBBER CO., GOULD ELECTRONICS, INC., INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO BULLDOG ELECTRIC AND ITE ELECTRICAL PRODUCTS COMPANY, GOULDS PUMPS LLC , GRAYBAR ELECTRIC COMPANY, INC., GREENE TWEED & CO, INC., GRINNELL LLC, GTE Operations Support Incorporated, HERCULES, LLC, HONEYWELL INTERNATIONAL, INC., as Successor-in-Interest to BENDIX CORP., HONEYWELL INTERNATIONAL INC., as Successor-in-Interest to HONEYWELL INC., HOWDEN NORTH AMERICA, INC., individually and as Successor-in-Interest to BUFFALO FORGE COMPANY, IMO INDUSTRIES INC., INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO DELAVAL STEAM TURBINE COMPANY, INVENSYS SYSTEMS, INC., Individually and as Successor-in-Interest to Fulton Sylphon, INDUSTRIAL HOLDINGS CORPORATION f/k/a CARBORUNDUM COMPANY, ITT CORPORATION, J-M MANUFACTURING COMPANY, INC., JAMES WALKER MFG. CO., JOHN CRANE, INC., JOHNSON CONTROLS, INC., KAISER GYPSUM COMPANY, INC, KELLY-MOORE PAINT COMPANY, INC., KROGH PUMP COMPANY, INC., LAMONS, MCKESSON CORPORATION, MCMASTER-CARR SUPPLY COMPANY, METROPOLITAN LIFE INSURANCE CO., MILWAUKEE VALVE COMPANY, INC., MISSION STUCCO CO., THE NASH ENGINEERING COMPANY, PFIZER, INC., PNEUMO ABEX, LLC, as Successor-in- Interest to ABEX CORPORATION, Rexel USA, INC, ROCKWELL AUTOMATION, INC., F/K/A ALLEN-BRADLEY COMPANY, Individually and as Successor-in-Interest to ROSTONE CORP., SCHNEIDER ELECTRIC USA INC, Individually and as Successor-in-Interest to SQUARE D COMPANY, SPENCE ENGINEERING COMPANY, INC., SPIRAX SARCO, INC., SPX CORPORATION AS SUCCESSOR-IN -INTEREST TO

UNION PUMPS AND CLYDE PUMPS N/K/A CLYDE UNION PUMPS AN SPX BRAND,

SULZER PUMPS (US) INC, Individually and as Successor-in-Interest to BINGHAM PUMPS,

SUPRO CORPORATION, UNION CARBIDE CORPORATION, VANDERBILT MINERALS,

LLC F/K/A R.T. VANDERBILT COMPANY, INC., VELAN VALVE CORP., VIACOMCBS

INC., f/k/a CBS Corporation, a Delaware corporation, f/k/a Viacom Inc., successor-by-merger to

CBS Corporation, a Pennsylvania corporation, f/k/a Westinghouse Electric Corporation, VIKING

PUMP, INC., WARREN PUMPS, LLC., f/k/a WARREN PUMPS, INC., WELCO

MANUFACTURING COMPANY, WHITTAKER CLARK & DANIELS, THE WILLIAM

POWELL COMPANY, YORK INTERNATIONAL CORPORATION, ZF ACTIVE SAFETY US

INC. f/k/a KELSEY-HAYES COMPANY, AND ZURN INDUSTRIES, LLC.

4.    At all times herein set forth, the Defendants' products were being employed in the manner and for the purposes for which they were intended.

5.    Jurisdiction is appropriate for all defendants in this matter due to the fact that each and every one of them either maintains a registered agent and/or is present within this State and purposefully avails itself of the rights and benefits of the laws of the State as a result of ownership of property, business operations, and/or sales to citizens of the State.

6.    The Plaintiff's exposure to and inhalation, ingestion or absorption of the asbestos fibers emanating from the above-mentioned products was completely foreseeable and could or should have been anticipated by the Defendants.

7.    The Defendants knew or should have known that the asbestos fibers contained in their products had a toxic, poisonous, and highly deleterious effect upon the health of persons inhaling, ingesting or otherwise absorbing them.

8.     That on or about March 10, 2021, Plaintiff first became aware that he had developed lung cancer, an asbestos-induced disease, and that at a subsequent time learned said disease was wrongfully caused.

9.     At all times, herein relevant, the Defendants had a duty to exercise reasonable care and caution for the safety of the Plaintiff and others working with and around the products of the Defendants containing asbestos.

10.     The Defendants failed to exercise ordinary care and caution for the safety of the Plaintiff in one or more of the following respects:

(a)     Included asbestos in their products, even though it was completely foreseeable and could or should have been anticipated that persons such as the Plaintiff working with or around them would inhale, ingest, bring it home or otherwise absorb great amounts of that asbestos;

(b)     Included asbestos in their products when the Defendants knew or should have known that said asbestos fibers would have a toxic, poisonous and highly deleterious effect upon the health of persons inhaling, ingesting or otherwise absorbing them;

(c)     Included asbestos in their products when adequate substitutes for the asbestos in them was available;

(d)     Failed to provide any or adequate warnings to persons working with and around the products of the dangers of inhaling, ingesting or otherwise absorbing the asbestos fibers contained in them;

(e)     Failed to provide any or adequate instructions concerning the safe methods of working with and around the products, including specific instructions on how to avoid inhaling, ingesting or otherwise absorbing the asbestos fibers in them; and

(f)     Failed to conduct tests on the asbestos containing products manufactured, sold, delivered or installed by the Defendants in order to determine the hazards to which workers and household members such as the Plaintiff, might be exposed while working with the products.

(g)   Failed to employ safe methods of working with or around
asbestos, thereby releasing asbestos fibers.

11.    That as a direct and proximate result of one or more of the foregoing acts or
omissions on the part of the Defendants mentioned above, the Plaintiff was exposed to and inhaled,
ingested or otherwise absorbed great amounts of asbestos fibers causing Plaintiff to develop the
asbestos disease aforesaid, which has disabled and disfigured the Plaintiff; the Plaintiff, was
compelled to expend and become liable for large sums of monies for hospital, medical and other
health care services necessary for the treatment of his asbestos-induced disease and conditions; the
Plaintiff, experienced great physical pain and mental anguish as a result of the inhalation, ingestion
and absorption of said asbestos fibers; that as a further result of his asbestos-induced disease and
conditions, the Plaintiff was hindered and prevented from pursuing his normal course of
employment, thereby losing large sums of money which otherwise would have accrued to him and
his estate.

12.    Defendants either owed a duty to Plaintiff or are liable for the tort of negligent
undertaking pursuant to Sections 323 and 324A of the Restatement (Second) of Torts. Defendants
undertook to provide services for others and therefore had a duty to use reasonable care in the
provision of said services. Defendants' assumption of the duties enumerated herein and their
failure to exercise reasonable care in the performance of such duties proximately caused Plaintiff's
injuries and damages.

WHEREFORE, Plaintiff prays judgment be entered against the Defendants jointly and
severally for actual and compensatory damages in an amount to be determined by a jury at trial
and, in excess of FIFTY THOUSAND ($50,000.00) DOLLARS as well the cost of this action.
Pre-judgment and post-judgment interest, and any other such relief that the court deems just and
equitable.

Respectfully submitted,
WALTER R. SCOTT, Plaintiff

## COUNT II
## (WILLFUL AND WANTON COUNT)

Comes now the Plaintiff, WALTER R. SCOTT, by his attorneys, SWMW Law, LLC, and

for their cause of action against the Defendants, state:

1. - 10. Plaintiff repeats and re-alleges Paragraphs 1 through 10 of Count I as and for

Paragraphs 1 - 10 of this Count II.

11.　Defendants are guilty of one or more of the following acts or omissions amounting

to willful and wanton misconduct:

> (a)　Intentionally or with a reckless disregard for the safety of
> Plaintiff, included asbestos in their products and/or installed
> asbestos-containing products, even though it was completely
> foreseeable and could or should have been anticipated that
> persons such as the Plaintiff, working with or around them
> would inhale, ingest or otherwise absorb great amounts of
> that asbestos;

> (b)　Intentionally or with a reckless disregard for the safety of
> Plaintiff, included asbestos in their products and/or installed
> asbestos-containing products when the Defendants knew or
> should have known that said asbestos fibers would have a
> toxic, poisonous and highly deleterious effect upon the
> health of inhaling, ingesting, bring it home or otherwise
> absorbing them;

> (c)　Intentionally or with a reckless disregard for the safety of
> Plaintiff, included asbestos in the products and/or installed
> asbestos-containing products when adequate substitutes for
> the asbestos in them was available;

> (d)　Intentionally or with a reckless disregard for the safety of the
> Plaintiff, failed to provide any or adequate warnings to
> persons working with and around the products of the dangers
> of bringing it home, inhaling, ingesting or otherwise
> absorbing the asbestos fibers in them;

(e)    Intentionally or with a reckless disregard for the safety of the Plaintiff, failed to provide any or adequate instructions concerning the safe methods of working with and around the products, including specific instructions on how to avoid inhaling, ingesting or otherwise absorbing the asbestos fibers in them; and

(f)    Intentionally or with a reckless disregard for the safety of the Plaintiff, failed to conduct tests on the asbestos containing products manufactured, sold or delivered by the Defendants in order to determine the hazards to which workers such as the Plaintiff might be exposed while working with the products.

12.    Plaintiff repeats and re-alleges Paragraph 10 of Count I as and for Paragraph 10 of this Count II.

WHEREFORE, Plaintiff prays judgment be entered against the Defendants jointly and severally for actual and compensatory damages in an amount to be determined by a jury at trial and, in excess of FIFTY THOUSAND ($50,000.00) DOLLARS as well the cost of this action. Pre-judgment and post-judgment interest, and any other such relief that the court deems just and equitable.

Respectfully submitted,
WALTER R. SCOTT, Plaintiff

## COUNT III
### (CONSPIRACY AGAINST HONEYWELL INTERNATIONAL, INC., as Successor in Interest to BENDIX CORP., METROPOLITAN LIFE INSURANCE COMPANY, and, PNEUMO ABEX, LLC, as Successor in Interest to ABEX CORPORATION)

Comes now the Plaintiff, WALTER R. SCOTT, by his attorneys, SWMW Law, LLC, and for their cause of action against the Defendants, HONEYWELL INTERNATIONAL, INC., as Successor in Interest to BENDIX CORP., METROPOLITAN LIFE INSURANCE COMPANY, and, PNEUMO ABEX, LLC, as Successor in Interest to ABEX CORPORATION state:

1.     Plaintiff repeats and re-alleges Paragraph 1 of Count I as and for Paragraph 1 of this Count III.

2.     During the course of his employments, Plaintiff was exposed to and inhaled, ingested or otherwise absorbed large amounts of asbestos fibers emanating from certain products he was working with and around which were manufactured, sold or distributed by the Defendants named in Count I above.

3.     The Defendants, including HONEYWELL INTERNATIONAL, INC., AS Successor in Interest to BENDIX CORP., METROPOLITAN LIFE INSURANCE COMPANY, and, PNEUMO ABEX, LLC, as Successor in Interest to ABEX CORPORATION individually and as agents of one another and as co-conspirators, agreed and conspired among themselves and with other asbestos manufacturers, distributors, and trade organizations, to injure the Plaintiff in the following manner.

4.     Beginning in the late 1920's, the conspirators, Johns-Manville, Raybestos-Manhattan, Metropolitan Life Insurance Company, Honeywell International, Inc., as Successor in Interest to Bendix Corp. and others conducted research on asbestos-related health problems and as a result undertook a duty to inform the consuming public about any health risks that could be associated therewith.  In approximately 1929, the conspirator, Metropolitan Life Insurance Company, through its agents and employees acting within the scope of their employment, notably Dr. Anthony J. Lanza, began an investigation of asbestos-related health hazards in the United States, by studying asbestos mines in Canada and on the Eastern seaboard of the United States.  In 1935, this study was altered by Lanza, with the full knowledge of Metropolitan, at the request of and in concert with the asbestos industry, and the conspirators named herein in order wrongly to influence the United States Public Health Service, the United States medical community and

various state legislatures, including the New Jersey Worker's Compensation Commission. At all times mentioned herein, Metropolitan Life Insurance Company was the general medical, disability and life insurance carrier, both occupational and non-occupational, for the conspirators Johns-Manville in the U.S. and Canada, and Raybestos-Manhattan, as well as others in the industry.

5. Dr. Lanza's omission of any citation to the significant English literature from his 1935 published report was a continuation of the policy of Metropolitan Life and its co-conspirators, to misrepresent and suppress relevant information about the seriousness of asbestosis disease, especially to asbestos industry employees and consumers of asbestos products.

6. The following conspirators were members of the trade association known as the Quebec Asbestos Mining Association ("Q.A.M.A."): Johns-Manville Corporation, Carey Canada, individually and as successor to Quebec Asbestos Corporation, National Gypsum Company and Turner & Newall, individually and successor to Bell Asbestos. These conspirators, members of the Q.A.M.A., participated in the above-described material misrepresentations of the work of Dr. Leroy Gardner published by Dr. Arthur Vorwald in the AMA Archives of Industrial Health in 1951. Evidence of the Q.A.M.A.'s involvement in this misrepresentation arises from co-conspirator Johns-Manville's membership in the Q.A.M.A., as well as correspondence from co-conspirators dated 10/29/47, 11/26/47, 3/6/38, 10/15/48, 3/8/49, 3/21/51 and 9/6/50 and all indicating close monitoring of the editing process of Dr. Gardner's work by Q.A.M.A.'s representative Mr. Ivan Sabourin, acting on behalf of all Q.A.M.A. members, and also acting in close concert with the Metropolitan Life Insurance Company and Dr. Anthony J. Lanza.

7. In addition to the above described actions, the conspirators, through their agent, Dr. Anthony J. Lanza of the Metropolitan Life Insurance Company, made a concerted effort to discredit and to terminate the studies and experiments of certain scientists who were developing

data of profound importance for the area of public health in relation to the lung cancer hazard which in fact did exist for workers and bystanders in the asbestos industry.

8.  Because of the above-described efforts of Dr. Lanza of Metropolitan Life, and the other co-conspirators, many other active scientists in the field of environmental cancer were driven out of their laboratories soon after describing their findings on cancer hazards of asbestos/industrial health origin. This included Dr. Gerritt Schepers, who had conducted in-patient studies in South Africa. (Lanza and Vandiver Brown suppressed the publication of Schepers work while Schepers was affiliated at New York University.) These efforts wrongfully obstructed and confused the real asbestos hazard situation, and had a profound retarding effect on the evaluation of the truth in asbestos and asbestos-related health and cancer research.

9.  In addition to all allegations above, the conspirators actively suppressed publications concerning asbestosis in the Asbestos Magazine, a trade magazine and important source of information to the public, and also to users of asbestos products, including users such as the Plaintiff herein. This magazine was read by sales and marketing personnel in the asbestos industry.

10.  The acts of the defendant conspirators, as described above, constitute a fraudulent misrepresentation/concealment which proximately caused the injuries to the Plaintiff in the following manner:

A.  The material published or caused to be published by the conspirators was false and incomplete in that the Defendants knowingly and deliberately deleted references to the known health hazards of asbestos and asbestos-related products.

B.     The Defendants individually, as members of a conspiracy, and as agents of other co-conspirators, intended the publication of false and misleading reports, and/or the non-disclosure of documented reports of the health hazards of asbestos:

1.     To maintain a favorable atmosphere for the continued sale and distribution and use of asbestos and asbestos-related products;

2.     To assist in the continued pecuniary gain of the Defendants through the sale of asbestos products to an ignorant public;

3.     To influence in the Defendant's favor legislation to regulate asbestos exposures and limit medical and disability claims for compensation;

4.     To provide a defense in lawsuits brought for injury resulting from asbestos disease;

5.     To prevent relevant medical inquiry about asbestos disease;

6.     To mislead the general public, and the Plaintiff, herein, about the hazards associated with asbestos products; and

7.     To induce the Plaintiff to use and continue to use asbestos products.

C.     The Plaintiff reasonably relied upon the published medical and scientific data documenting the purported safety of asbestos and asbestos-related products, and the absence of published medical and scientific reports on the hazards of asbestos and asbestos-related products to asbestos because they believed it to be safe.

D.     Defendants individually, and as members of a conspiracy, and as agents of other co-conspirators intended that the Plaintiff, relied upon the published reports regarding the safety of asbestos and asbestos-related products and upon the absence of published medical and

scientific data regarding the hazards of asbestos and asbestos-related products, to continue their exposure to those products.

E.     Defendants individually, and as members of a conspiracy, and as agents of other co-conspirators were in a position of superior knowledge regarding the health hazards of asbestos and therefore the Plaintiff and others deciding to use said asbestos-containing products to which Plaintiff was exposed had a right to rely and did rely on the published reports commissioned by the Defendant regarding the health hazards of asbestos and the absence of published medical and scientific data regarding the hazards of asbestos and asbestos-related products.

F.     Plaintiff suffered injuries as a direct and proximate result of the acts alleged above.

11.     As a direct and proximate result of Metropolitan Life's intentional publication of deceptive and misleading medical data and information, as described in the preceding paragraphs, upon which data the Plaintiff, reasonably relied, the Defendant caused asbestos and/or asbestos-containing products to be used by Plaintiff, and Plaintiff has inhaled or otherwise ingested hazardous asbestos dust, and/or will inhale or ingest hazardous asbestos dust, resulting in injuries.

12.     Additionally and alternatively, as a direct and proximate result of Metropolitan Life, and Honeywell International, Inc., as Successor in Interest to Bendix Corp.'s actions and omissions as described above, the Plaintiff was caused to remain ignorant concerning the danger of human exposure to asbestos, resulting in damage to the Plaintiff by depriving the Plaintiff, his agents, employees and the general public, of opportunities to be aware of the hazards of asbestos exposure, and thus the opportunity to take proper safety precautions and/or avoid exposure to asbestos dust.   Because of this ignorance on the part of the Plaintiff, HONEYWELL INTERNATIONAL, INC., AS SUCCESSOR IN INTEREST TO BENDIX CORP.,

METROPOLITAN LIFE INSURANCE COMPANY, AND, PNEUMO ABEX, LLC, as Successor in Interest to ABEX CORPORATION's concealment from the Plaintiff of the alteration of its published test results, and the actions and omissions and concerted design and conspiracy of HONEYWELL INTERNATIONAL, INC., as Successor in Interest to BENDIX CORP., METROPOLITAN LIFE INSURANCE COMPANY, and, PNEUMO ABEX, LLC, as Successor in Interest to ABEX CORPORATION's and others, all as described above, the Plaintiff, was occupationally exposed to asbestos and/or asbestos-containing products used at their places of employment and has inhaled or otherwise ingested hazardous asbestos dust resulting in his developing lung cancer.

13. As a direct and proximate result of one or more of the foregoing acts or omissions on the part of HONEYWELL INTERNATIONAL, INC., as Successor in Interest to BENDIX CORP., METROPOLITAN LIFE INSURANCE COMPANY, and, PNEUMO ABEX, LLC, as Successor in Interest to ABEX CORPORATION the Plaintiff, was exposed to and inhaled, ingested or otherwise absorbed great amount of asbestos fibers causing Plaintiff to develop the asbestos disease aforesaid, which has disabled and disfigured the Plaintiff; the Plaintiff has in the past and will in the future be compelled to expend and become liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of his asbestos-induced disease and conditions; the Plaintiff, experienced great physical pain and mental anguish as a result of the inhalation, ingestion and absorption of said asbestos fibers; that as a further result of his asbestos-induced disease and conditions, the Plaintiff was hindered and prevented from pursuing his normal course of employment, thereby losing large sums of money which otherwise would have accrued to him and his estate.

WHEREFORE, Plaintiff prays judgment be entered against the Defendants jointly and severally for actual and compensatory damages in an amount to be determined by a jury at trial and, in excess of FIFTY THOUSAND ($50,000.00) DOLLARS as well the cost of this action. Pre-judgment and post-judgment interest, and any other such relief that the court deems just and equitable.

> Respectfully submitted,
> WALTER R. SCOTT, Plaintiff

### COUNT IV
### (FRAUDULENT MISREPRESENTATION AGAINST GENERAL ELECTRIC COMPANY)

1.    Plaintiffs repeat and re-allege Paragraph 1 of Count I and Count II as and for Paragraph 1 of this Count IV.

2.    During the course of Plaintiff's employment as referenced in paragraph 1 of Counts I and II, the Plaintiff was exposed to and inhaled, ingested or otherwise absorbed large amounts of asbestos fibers.

3.    Plaintiff was unaware of the dangers of the asbestos-containing products which rendered them unsafe for their intended use. At the time, Plaintiff used or worked around these products, such use was in a manner that was reasonably anticipated by.

4.    That on or about March 10, 2021, Plaintiff first became aware that he had developed lung cancer, an asbestos-induced disease, and that subsequent time learned said disease was wrongfully caused. Defendant, GENERAL ELECTRIC COMPANY, through its officers and employees, knew or should have known at least by 1940 that asbestos-containing products which it supplied and which were used extensively throughout the facility, were a health hazard to people who worked with and around them, and in the alternative, had no positive proof that prolonged

exposure to asbestos was safe. Notwithstanding this knowledge, Defendant engaged in the following omissions or commissions:

(a) It deliberately, intentionally, wantonly and designedly furnished asbestos-containing products to Plaintiff for use in his duties at the facility;

(b) It deliberately, intentionally, wantonly and designedly failed to warn Plaintiff about the known dangers of asbestos exposure at the facility;

(c) It deliberately, intentionally, wantonly and designedly failed to inform Plaintiff of its known potentially hazardous work place as a result of asbestos exposure;

(d) It deliberately, intentionally, wantonly and designedly failed to replace the hazardous asbestos-containing products with asbestos substitutes which it knew or should have known by 1940 were available;

(e) It deliberately, intentionally, wantonly and designedly failed to abate or contain the unsafe work environment although it knew or should have known in the 1940s that containment and abatement were available;

(f) It deliberately, intentionally, wantonly and designedly made Plaintiff work in dangerous areas of the facility knowing that it posed a significant health hazard to people because of the friable and deteriorating condition of asbestos-containing products;

(g) It deliberately, intentionally, wantonly and designedly failed to restrict Plaintiff from working in dangerous areas of the facility which had been identified as posing a significant health hazard because of the friable or deteriorating condition of asbestos-containing products;

(h) It deliberately, intentionally, wantonly and designedly failed to provide any or adequate instructions concerning the safe methods of working with and around the products it supplied, including specific instructions on how to avoid inhaling, ingesting or otherwise absorbing the asbestos fibers;

(i) It deliberately, intentionally, wantonly and designedly failed to provide masks, respirators or other protective apparel to Plaintiff,

thereby permitting Plaintiff to work around hazardous asbestos-containing material without protection; and

(j) It deliberately, intentionally, wantonly and designedly failed 1) to provide medical examinations (until the 1980s), 2) failed to determine past asbestos exposure of its employees and workers, and 3) failed to identify those trades that came into contact with asbestos-containing products it supplied.

5.     In failing to act on each of these items as listed in Paragraph 4, Defendant, GENERAL ELECTRIC COMPANY, deliberately, intentionally, wantonly and designedly engaged in conduct designed to actively conceal and suppress material facts knowing Plaintiff would rely on these facts to his detriment and cause him bodily harm.

6.     In failing to act on each of these items as listed in Paragraph 4, Defendant, GENERAL ELECTRIC COMPANY, through its silence deliberately, intentionally, wantonly and designedly engaged in false and deceptive conduct of a material nature, knowing or believing said conduct to be false and doing it for the purpose of inducing Plaintiff to continue to work at said facilities, causing Plaintiff bodily harm.  Plaintiff reasonably believed and relied on Defendant's conduct to Plaintiff.

7.     In failing to act on each of these items as listed in Paragraph 4, Defendant, GENERAL ELECTRIC COMPANY, committed, commanded or expressly authorized the concealment of the known dangers of asbestos intending that the Plaintiff would rely on its silence and thereby inhale, ingest or otherwise absorb asbestos fibers and become injured.

8.     GENERAL ELECTRIC COMPANY, undertook a duty to provide a safe work place for Plaintiff.  Defendant knew that Plaintiff relied on it to provide a safe work place.  In permitting and knowing that Plaintiff would rely on Defendant to provide a safe work place, GENERAL ELECTRIC COMPANY, deliberately, intentionally, wantonly and designedly engaged in a false representation of a material fact, knowing it to be false and doing it for the purpose of inducing

Plaintiff to continue to work at the above-referenced sites. Plaintiff reasonably believed and relied on Defendant's false representation to Plaintiff's detriment. By this conduct, GENERAL ELECTRIC COMPANY, intended to cause bodily harm to Plaintiff.

9.      As a proximate cause of each of the foregoing acts or omissions, active concealments and false representations, and intentional and wanton conduct, both individually and collectively, the Plaintiff was exposed to and inhaled, ingested or otherwise absorbed great amounts of asbestos fibers without his consent, causing Plaintiff to develop lung cancer; the Plaintiff has in the past and will in the future be compelled to expend and become liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of his asbestos-induced disease and conditions; the Plaintiff has in the past and will in the future experience great physical pain and mental anguish as a result of the inhalation, ingestion and absorption of said asbestos fibers; and that as a further result of his asbestos-induced disease and conditions, the Plaintiff has in the past and will in the future be hindered and prevented from pursuing his  normal course of employment and lifestyle, thereby losing large sums of money which otherwise would have accrued to him.

WHEREFORE, Plaintiffs pray judgment be entered against the Defendants jointly and severally for actual and compensatory damages in an amount to be determined by a jury at trial and, in excess of FIFTY THOUSAND ($50,000.00) DOLLARS as well the cost of this action. Pre-judgment and post-judgment interest, and any other such relief that the court deems just and equitable.

Respectfully submitted,
WALTER R. SCOTT, Plaintiff

## COUNT V
## (INTENTIONAL TORT BY GENERAL ELECTRIC COMPANY)

1.    Plaintiff repeats and re-allege Paragraph 1 of Count IV as and for Paragraph 1 of this Count V.

2.    Plaintiff repeats and re-allege Paragraphs 2, 3, 4 and 5 of Count IV as and for Paragraphs 2, 3, 4 and 5 of this Count V.

3.    In failing to act on each of these items as listed in Paragraph 4, GENERAL ELECTRIC COMPANY, through its silence deliberately, intentionally, wantonly and designedly concealed the known dangers of asbestos, intending that Plaintiff would come in contact with asbestos.

4.    In failing to act on each of these items as listed in Paragraph 4, GENERAL ELECTRIC COMPANY, through its silence deliberately, intentionally, wantonly and designedly engaged in a course of conduct intending that Plaintiff would inhale, ingest or otherwise absorb asbestos fibers and become injured.

5.    In failing to act on each of these items as listed in Paragraph 4, GENERAL ELECTRIC COMPANY, committed, commanded or expressly authorized the concealment of the known dangers of asbestos intending that the Plaintiff would come in contact with asbestos and inhale, ingest, or otherwise absorb asbestos fibers which would result in Plaintiff's injury.

WHEREFORE, Plaintiff prays judgment be entered against the Defendants jointly and severally for actual and compensatory damages in an amount to be determined by a jury at trial and, in excess of FIFTY THOUSAND ($50,000.00) DOLLARS as well the cost of this action. Pre-judgment and post-judgment interest, and any other such relief that the court deems just and equitable.

Respectfully submitted,
WALTER R. SCOTT, Plaintiff

**COUNT VI**
**NEGLIGENCE AGAINST DEFENDANT GENERAL ELECTRIC COMPANY**
**(PREMISES DEFENDANT)**

Now come the Plaintiffs, listed above, by their attorneys, SWMW Law, LLC and for their cause of action against the Defendant, GENERAL ELECTRIC COMPANY, alleges as follows:

1.    Plaintiff was frequently and regularly exposed to asbestos fibers through his work at the premises listed herein.

2.    During the course of his work, Plaintiff was exposed to and inhaled asbestos fibers emanating from certain products he was working with and around that were distributed, supplied or installed by the Defendants.

3.    Plaintiff was unaware of the dangers of the asbestos-containing products which rendered them unsafe for their intended use. At the time, Plaintiff used or worked around these products, such use was in a manner that was reasonably anticipated by Defendants.

4.    Defendants through their officers and employees knew or should have known at lease by 1930 that asbestos-containing products which it supplied and which were used extensively throughout its facilities were a health hazard to people who worked with and around them, or in the alternative, had no positive proof that prolonged exposure to asbestos was safe.

5.    Defendants owed to him a duty to provide a safe place to work, and a duty to give him timely and adequate notice of latent or concealed dangers which were known or should have been known by Defendant.

6.    Defendants, and each of them breached its duties to Plaintiff by engaging in the following omissions or commissions:

a.  It negligently furnished asbestos-containing products for use at the facility;

b. It negligently failed to warn about the known dangers of asbestos exposure at the facility;

c. It negligently failed to inform Plaintiff of its known potentially hazardous work places as a result of asbestos exposure;

d. It negligently failed to replace the hazardous asbestos-containing products with asbestos substitutes which it knew or should have known by 1930 were available;

e. It negligently failed to abate or contain the unsafe work environment although it knew or should have known in the 1930s that containment and abatement were available;

f. It negligently made Plaintiff work in dangerous areas of the facility knowing that it poses a significant health hazard to people because of the friable and deteriorating condition of asbestos-containing products;

g. It negligently failed to restrict Plaintiff from working in dangerous areas of the facility which had been identified as posing a significant health hazard because of the friable or deteriorating condition of asbestos-containing products;

h. It negligently failed to provide any or adequate instructions concerning the safe methods of working with and around the products it supplied, including specific instruction on how to avoid carrying the asbestos fibers home to family members; and

i. It negligently failed to provide masks, respirators or other protective apparel to Plaintiff, thereby permitting him to work around hazardous asbestos-containing material without protection.

7. Defendants undertook a duty to provide a safe work place for Plaintiff. Defendants knew that said Plaintiff relied on it to provide a safe work place. In permitting and knowing that said Plaintiff would rely on Defendants to provide a safe work place, Defendants negligently

engaged in a false representation of material fact, knowing it to be false and doing it for the purpose of inducing said Plaintiff to continue to work for Defendant. Plaintiff reasonably believed and relied on Defendants' representations to his detriment.

8.     The breach by Defendants of their duties to Plaintiff was a direct and proximate cause of his development and contraction of asbestos-related diseases and resulted in damages more particularly described below.

9.     As a direct and proximate cause of each of the foregoing negligent acts or omissions, both individually and collectively, the Plaintiff was expose to and inhaled asbestos fibers without his consent, causing him to develop the asbestos disease noted above; the said Plaintiff has in the past and will in the future be compelled to expend and become liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of his asbestos-induced disease and conditions; the said Plaintiff has in the past and will in the future experience great physical pain and mental anguish as a result of the inhalation of said asbestos fibers; and that as further result of his asbestos-induced disease and conditions, the said Plaintiff has in the past and will in the future be hindered and prevented from pursuing his normal course of employment, thereby losing large sums of money which otherwise would have accrued to him.

WHEREFORE, Plaintiffs pray judgment be entered against the Defendants jointly and severally for actual and compensatory damages in an amount to be determined by a jury at trial and, in excess of FIFTY THOUSAND ($50,000.00) DOLLARS as well the cost of this action. Pre-judgment and post-judgment interest, and any other such relief that the court deems just and equitable

Respectfully submitted,
WALTER R. SCOTT, Plaintiff

Respectfully submitted,

SWMW Law, LLC

By: _____

Benjamin R. Schmickle, #6270568
Matthew C. Morris, #6285481
asbestos@swmwlaw.com
Attorneys for Plaintiff
701 Market Street, Suite 1000
St. Louis, MO 63101
(314) 480-5180
(314) 932-1566 Facsimile